Michael CARNLEY, Plaintiff,

v.

AID TO HOSPITALS, INC.,
Defendant/Third–Party
Plaintiff.

v.

BOEWE–PASSAT REININGUNGS–UND WASCHEREITECHNIK GMBH, E. Weit Machinery Corp., and Boewe–Passat Drycleaning & Laundry Machinery Corporation, Third–Party Defendants.

No. 95–CV–6298L.

United States District Court,
W.D. New York.

Aug. 28, 1997.

Kevin Thomas Conklin, Mead, Hecht, Conklin & Gallagher, White Plains, NY, for Michael Carnley.

Glenn Pezzulo, Culley, Marks, Tanenbaum, Capell and Pezzulo, Rochester, NY, for Aid to Hospitals, Inc.

Maurice L. Sykes, Lustig & Brown, LLP, Buffalo, NY, for Texas Workers' Compensation Funds.

Robert M. Shaddock, Saperston & Day, P.C., Rochester, NY, Sheldon Hurwitz, Hurwitz & Fine, P.C., Buffalo, NY, for Boewe–Passat Reiningungs–Und Waschereitechnik GMBH,

Joseph G. Fritsch, Jr., Connors & Corcoran, Rochester, NY, for E. Weit Machinery Co.

## DECISION AND ORDER

LARIMER, Chief Judge.

### BACKGROUND

Plaintiff, Michael Carnley ("Carnley"), filed a complaint against Aid to Hospitals, Inc. ("ATH"), alleging that injuries he sustained while performing work on a laundry machine in New York were the result of ATH's negligence. Jurisdiction is based on diversity of citizenship. ATH filed a third-party complaint for indemnity and/or contribution against Boewe–Passat Reiningungs–Und Waschereitechnik Gmbh ("German Boewe–Passat"), E. Weit Machinery Co. ("Weit")[1], and Boewe–Passat Drycleaning & Laundry Machinery Corp. ("Boewe–Passat"). Carnley was a Texas resident employed by Boewe–Passat, a Texas corporation, and had traveled to New York to work on the laundry machine at issue.

There are two motions pending before the Court: (1) Boewe–Passat's motion for summary judgment seeking to dismiss the third-party complaint against it, and (2) Texas Workers' Compensation Fund ("Texas Fund") motion to intervene in the action.

For the reasons discussed, infra, Boewe–Passat's motion for summary judgment and Texas Fund's motion to intervene are granted.

### DISCUSSION

Carnley, a Texas resident, alleges that he was injured on February 2, 1994 while per-

---

**1.** On May 12, 1997, third-party defendant Weit informed the court that it had settled with Carn-ley.

forming work on a laundry machine on the premises of ATH, a New York corporation. As a result of his work-related injuries, Carnley received workers' compensation benefits from Boewe–Passat's workers' compensation carrier, Texas Fund.

In his complaint, Carnley alleges that ATH was negligent for failing to maintain the laundry machine's warning devices in a safe and reasonable manner. Specifically, Carnley alleges that ATH allowed the warning devices to fall into disrepair and re-programmed the safety mechanisms so that the machine would remain operational even though the warning devices were not functioning. Further, Carnley alleges that ATH failed to warn or notify Carnley of its re-programming of the machine.

The third-party complaint by ATH, alleging negligence and strict liability, seeks contribution and indemnity from Boewe–Passat, among others.

## I. Boewe-Passat's Motion for Summary Judgment

Boewe-Passat moves for summary judgment and seeks dismissal of the third-party complaint against it for contribution and indemnity. Boewe–Passat correctly asserts that Texas law precludes such actions. The Workers Compensation Law of Texas prohibits claims against employers for injuries sustained by their employees whether the claim is brought directly by the employee or by a third-party seeking contribution or indemnity. Tex. Lab.Code Ann. § 417.004.

Boewe-Passat contends that Texas law should apply on the facts of this case and the action be dismissed. Alternatively, Boewe–Passat suggests that even if this Court were to apply New York law, the recent amendment to New York's Workers Compensation Law barring such actions against employers should control, even though that legislative change took effect after plaintiff's injuries and the commencement of this action.

■ Before dealing with the merits of the conflict-of-laws issue, there is a procedural matter raised by ATH in opposition to Boewe–Passat's motion. ATH contends that Boewe–Passat's motion raises an affirmative defense to the third-party complaint and must, therefore, be pleaded in Boewe–Passat's answer. ATH contends that because Boewe–Passat failed to assert this affirmative defense in its answer, it has waived the defense and may not raise it now in this summary judgment motion.

Although I agree with ATH that the matter raised by Boewe–Passat is an affirmative defense, I believe that the answer can now be amended and the merits of the defense considered here on summary judgment.

■ In determining whether a claim is an affirmative defense, federal courts sitting in diversity actions should look to state law. See *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1540–1541 (2d Cir. 1997). Matters treated as affirmative defenses under state law are generally treated in the same way by federal courts in diversity cases. *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir.1991). In the present case, whether New York law or Texas law is applied to determine whether Boewe–Passat's workers' compensation defense constitutes an affirmative defense, the outcome is the same. In both New York and Texas, in a civil action for personal injuries, the existence of workers compensation is an affirmative defense to the action. *Caceras v. Zorbas*, 74 N.Y.2d 884, 885, 547 N.Y.S.2d 834, 547 N.E.2d 89 (1989); *Brooks v. National Convenience Stores, Inc.*, 897 S.W.2d 898, 905 (Tex.App.— San Antonio 1995).

The fact that Boewe–Passat failed to assert this defense as an affirmative defense in its original answer does not constitute a waiver and bar consideration of the motion now. Rule 8(c), Fed.R.Civ.P., provides that "[i]n pleading to a preceding pleading a party shall set forth affirmatively ... any ... matter constituting an ... affirmative defense."

■ The main objective of Rule 8(c) is to give the opposing party notice of the affirmative defense and the opportunity to rebut it. *United States v. Continental Illinois Nat'l Bank and Trust Co. Of Chicago* 889 F.2d 1248, 1255 (2d Cir.1989) ("one of the main reasons for the rule ... is to avoid surprises to the plaintiff."). See also *Blonder–Tongue Laboratories, Inc. v. University of Illinois*

*Foundation,* 402 U.S. 313, 350, 91 S.Ct. 1434, 1453–1454, 28 L.Ed.2d 788 (1971). With this in mind, courts have allowed affirmative defenses to be raised in summary judgment motions where the party opposing the motion was not prejudiced in its ability to respond. *United States v. Krieger,* 773 F.Supp. 580, 583 (S.D.N.Y.1991) (failure to plead affirmative defense of illegality did not preclude defendants from raising that defense on motion for summary judgment where plaintiff had adequate time to respond); *Carino v. Town of Deerfield,* 750 F.Supp. 1156, 1162 n. 9 (N.D.N.Y.) ("[I]n this Circuit defendants are not deemed to have waived the affirmative defense of res judicata by failing to expressly assert it in their answer."), aff'd, 940 F.2d 649 (2d Cir.1991); *Steinberg v. Columbia Pictures Indus., Inc.,* 663 F.Supp. 706, 715 (S.D.N.Y.1987) ("Although Fed. R.Civ.P. 8(c) requires affirmative defenses to be pleaded, courts have been more lenient in the context of motions for summary judgment."); *Kleinknecht v. Gettysburg College,* 989 F.2d 1360, 1373–1374 (3d Cir.1993) (affirmative defense of immunity allowed where first raised on motion for summary judgment).

The cases cited by ATH in support of its position that Boewe–Passat has waived its workers' compensation defense are distinguishable from the present case. All but one of the cases cited by ATH involved affirmative defenses that were raised much later in the litigation than is the case here. See *Troxler v. Owens–Illinois, Inc.,* 717 F.2d 530, 532 (11th Cir.1983) (affirmative defense of statutory immunity waived where first raised on appeal); *Jakobsen v. Massachusetts Port Authority,* 520 F.2d 810, 813 (1st Cir.1975) (affirmative defense waived where defendant raised defense for the first time in a motion for a directed verdict after the presentation of evidence at trial); *Freeman v. Chevron Oil Co.,* 517 F.2d 201, 204 (5th Cir.1975) (affirmative defense not raised until morning of trial).

Unlike the defendants in the above-cited cases, Boewe–Passat has raised its affirmative defense at a relatively early stage of the litigation. In fact, it appears that the parties to the first party action have not yet completed discovery.

In the present case, ATH has been well represented by counsel and has fully responded to Boewe–Passat's summary judgment motion. Furthermore, ATH has made no showing whatsoever that it would be prejudiced by this court's consideration of the defense at this stage of the proceedings.

Because ATH has received notice of the affirmative defense, has been given ample opportunity to respond and has not demonstrated that it would be prejudiced if the Court were to consider Boewe–Passat's defense based on the exclusivity of the workers' compensation laws, Boewe–Passat's failure to plead the defense in its answer does not, under these circumstances, act as a waiver of the defense.

**Texas Law or New York Law**

■ Boewe-Passat urges this Court to apply Texas law to this dispute. ATH, on the other hand, vigorously argues that New York law applies. When confronted with a choice of law issue, "[a] federal district court must look to the choice of law rules of the state in which it sits." *AroChem International, Inc. v. Buirkle* 968 F.2d 266, 269 (2d Cir.1992), citing *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–1022, 85 L.Ed. 1477 (1941). Thus, in the present case, I must apply New York's choice of law rules to determine whether Texas or New York law governs this third-party action. Plaintiff is a Texas resident. Defendant is a New York corporation and the injury occurred in New York. The moving party, and third-party defendant, is a Texas corporation.

In New York, "[i]nterest analysis [is] the relevant analytical approach to choice of law in tort actions ..." *Schultz v. Boy Scouts of America,* 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985). The New York Court of Appeals in *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), re-affirming its earlier decision in *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), stated that it "rejected the mechanical place of injury rule in personal injury cases because it failed to take account of underlying policy considerations." *Neumeier,* 31 N.Y.2d at 127, 335 N.Y.S.2d 64, 286 N.E.2d 454. The

Court recognized that it was sacrificing the certainty of the old rule for "the more just, fair and practical result that may best be achieved by giving controlling effect to the law of the jurisdiction which has the greatest concern with, or interest in, the specific issue raised in the litigation." *Id.*

Thereafter, in *Cooney v. Osgood Machinery, Inc.,* 81 N.Y.2d 66, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993), a distinction was recognized between "laws that regulate primary conduct (such as standards of care) and those that allocate losses after the tort occurs (such as vicarious liability rules). If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders. But if competing 'postevent remedial rules' are at stake other factors are taken into consideration, chiefly the parties' domiciles." *Cooney,* 81 N.Y.2d at 72, 595 N.Y.S.2d 919, 612 N.E.2d 277.

"Contribution rules—as involved in the present case—are loss allocating, not conduct regulating." *Id.* at 74, 595 N.Y.S.2d 919, 612 N.E.2d 277. Thus, in the present case in which ATH is seeking contribution and/or indemnity from Boewe–Passat, factors in addition to the locus of the tort must be considered.

Although New York is the place where the accident occurred, I believe that other factors compel the conclusion that Texas law, and not New York law, applies as to whether the third-party action may be maintained. Both plaintiff and the third-party defendant, plaintiff's employer, are from Texas. Clearly Texas law precludes an action against Boewe–Passat. Prior to 1996, New York's law concerning contribution conflicted with Texas law. However, that conflict no longer exists. In 1996, New York's Worker's Compensation Law, § 11, was amended and now bars claims for indemnity and contribution unless it is established by competent medical evidence that the employee suffered a "grave

injury." In this case, ATH does not contend that plaintiff did, in fact, sustain a "grave injury" as defined by the statute. Rather, ATH contends that the change in New York's Worker's Compensation Law should not affect this action since the injury occurred and the action was commenced prior to the legislative change. I do not believe that this argument is persuasive. The issue is whether New York now has a sufficient interest in the matter that its law should apply instead of the law of Texas.

If New York law now allowed for indemnity actions, without reservation, perhaps the conflict would be resolved in favor of the jurisdiction where the accident occurred. This was what the court did in *Cooney,* a case heavily relied on by ATH here. *Cooney,* however, is not controlling, principally because of the change in New York's compensation law.

Thus, while *Cooney* found that New York had a substantial interest in allowing a defendant who pays more than its fair share of a judgment to seek contribution from other responsible tortfeasors,[2] that interest no longer exists in light of the change in the law. Regardless of whether the amendment can be applied retroactively, it cannot be said that New York now has a continuing interest in applying its previous law subjecting an employer to third-party actions for contribution or indemnification, particularly where the employee did not suffer a "grave injury."[3]

The decision of Texas, on the other hand, "to shield employers from contribution claims is ... a policy choice implicating significant State interests: 'to deny a person the immunity granted ... by a work[er]'s compensation statute of a given state would frustrate the efforts of that state to restrict the cost of industrial accidents and to afford a fair basis for predicting what these costs will be.'" *Cooney,* 81 N.Y.2d at 75, 595 N.Y.S.2d 919, 612 N.E.2d 277, quoting Restatement [Second] of Conflict of Laws § 184, comment b,

---

**2.** *Cooney,* 81 N.Y.2d at 76, 595 N.Y.S.2d 919, 612 N.E.2d 277.

**3.** ATH has not argued that Carnley did, in fact, sustain a "grave injury" as defined by statute,

and based on the injuries described in the complaint, it appears clear that plaintiff did not suffer "grave injury."

at 547. For another State "to subject a person who has been held liable in work[er]'s compensation to further unlimited liability in tort or wrongful death would frustrate the work[er]'s compensation policy of the State in which the award was rendered." *Id.* at 75–76, 595 N.Y.S.2d 919, 612 N.E.2d 277, quoting Restatement [Second] of Conflict of Laws § 183, comment c, at 544. New York's interest in the loss allocation is now sufficiently attenuated that Texas law must control.

Because Texas has a significant interest in having its workers' compensation laws applied in matters involving a Texas employee and his employer and because New York does not have a significant interest in the case, I find that Texas law applies to the validity of this third-party action.

Since Texas law protects employers from third-party actions for contribution and/or indemnification, ATH's claim against Boewe–Passat for contribution and/or indemnification must be dismissed.[4]

**Texas Fund's Motion to Intervene**

Texas Fund moves to intervene as of right in the above-entitled action pursuant to Fed. R.Civ.Pro. 24(a)(2), which provides in part:

> Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

■ Intervention as of right requires the applicant to establish four elements: (1) that a timely application has been made, (2) that

the moving party has an interest in the subject matter of the litigation, (3) that disposition of the action impairs or impedes the moving party's ability to protect its interest, and (4) that the movant's interest is not adequately protected by the existing parties. *American Lung Ass'n v. Reilly,* 962 F.2d 258, 261 (2d Cir.1992); *Washington Elec. Co-op., Inc. v. Massachusetts Municipal Wholesale Elec. Co.,* 922 F.2d 92, 96 (2d Cir.1990).

■ It cannot be disputed that Texas Fund has an interest in the subject matter of this litigation. To date, Texas Fund has paid over $46,000 to Carnley pursuant to Texas Workers' Compensation laws for loss of income and medical expenses. The only basis for Carnley's opposition to the motion is that it is unnecessary for Texas Fund to intervene since by law it already has a lien on any proceeds arising out of this litigation.

■ It is clear that Texas Fund is not required to intervene in this action to protect its interest. Under Texas law,[5] a carrier's right to reimbursement of workers' compensation benefits paid to a plaintiff in an action against a third-party is not dependent on the carrier's intervention in the action. *Rockwood Ins. Co. v. Williamson,* 596 F.Supp. 1524, 1527 (N.D.Texas 1984). Courts interpreting the Texas Workers' Compensation Law have found that "[t]he language is clear that the workmen's compensation carrier can recoup the monies paid to an injured employee from any recovery against a negligent third party." *Rockwood,* supra at 1527.

However, the fact that Texas Fund is not required to intervene does not necessarily lead to the conclusion that it is prohibited from doing so. Texas Fund has a legitimate interest in the case and it is in a much better position to protect that interest than any of the other parties. Texas Fund is entitled to

---

**4.** Given my determination that Texas law applies and prohibits ATH's third-party action against Boewe–Passat, I need not decide whether the recent amendment to § 11 of New York's Workers' Compensation Law is to be applied retroactively.

**5.** I find that Texas law governs this aspect of the case. "It is the law of [New York] that the rights of an employer and its insurance carrier to be reimbursed for workers' compensation benefits

paid to an employee are governed by the law of the state in which the benefits were paid ..." *Boyle v. Texasgulf Aviation, Inc.,* 696 F.Supp. 951, 953 (S.D.N.Y.), *aff'd,* 875 F.2d 307 (2d Cir. 1989), citing *Liberty Mutual Ins. Co. v. Borsari Tank Corp.,* 248 F.2d 277, 282 (2d Cir.1957). In the present case, the workers' compensation benefits were paid in Texas. Thus, Texas law applies here.

intervene in the action to protect its legitimate interests. I foresee no harm or prejudice to any of the other parties by virtue of this intervention. Texas Fund's intervention in the lawsuit would have little effect on how the case is actually prosecuted before a jury and affects no substantial interest of any of the other parties.

Other courts, faced with identical or very similar circumstances, have held that an insurance carrier may intervene as of right in an action brought by the injured party against a third-party tortfeasor. See *Smith Petroleum Service, Inc. v. Monsanto Chemical Co.*, 420 F.2d 1103 (5th Cir.1970) (holding that carrier was entitled to intervene as of right where the state's worker's compensation law permitted subrogation of a compensation carrier); *Curtis v. Sears, Roebuck & Co.*, 754 F.2d 781, 783 (8th Cir.1985) (no fault insurance carrier allowed to intervene as of right to assert statutory lien in action between injured person and third-party tortfeasor); *Black v. Texas Employers Ins. Assoc.*, 326 F.2d 603, 604 (10th Cir.1964) ("If subrogated, a compensation carrier may intervene in an action as a matter of right ..."). But see *Schultz v. Connery*, 863 F.2d 551 (7th Cir.1988) ("Because [the insurer's] right to reimbursement in no way depends on whether it was a party to th[e] lawsuit, [the court] conclude[d] that [the insurer] ... failed to establish the likelihood of prejudice if its motion to intervene is denied.").

 Thus, I find that Texas Fund has satisfied the requirements of Fed.R.Civ.Pro. 24(a)(2) and is entitled to intervene as of right.[6]

## CONCLUSION

The motion for summary judgment brought by third-party defendant Boewe-Passat Drycleaning & Laundry Machinery Corp. is granted. The third-party complaint against Boewe-Passat Drycleaning & Laun-

dry Machinery Corp. is hereby dismissed. Texas Fund's motion to intervene is granted.[7]

IT IS SO ORDERED.

---

**6.** Because intervention is granted as of right pursuant to Fed.R.Civ.Pro. 24(a)(2), Texas Fund is not required to establish an independent ground of federal jurisdiction. See *Mutual Fire, Marine and Inland Ins. Co. v. Adler*, 726 F.Supp. 478, 481 (S.D.N.Y.1989), citing *Moore's Federal Practice*, vol. 3–B ¶ 24.18(1).

**7.** The extent to which Texas Fund will be permitted to actively participate in this action will be determined by the Court at a later date, if necessary.